# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 86 C 7888 | **DATE** | March 28, 2001 |
| **CASE TITLE** | | NOW v. Scheidler | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, defendants' motion for relief from judgment [Doc. #1406-1] and supplemental Rule 60(b) motion [Doc. # 1408-1] are DENIED.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 28 2001 | |
| | Notified counsel by telephone. | | date docketed | 1444 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| dc(lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |


DOCKETED
MAR 28 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| National Organization for Women, Inc., and its Women Members and Other Women Who Sue or May Use the Services of Women's Health Centers that Provide Abortions; Delaware Women's Health Organization, Inc., and Summit Women's Health Organization, Inc., on Behalf of Themselves and All Other Similarly Situated Clinics,<br><br>    Plaintiffs,<br><br>v.<br><br>Joseph M. Scheidler, Andrew Scholberg, Timothy Murphy, Pro-Life Action League, and Operation Rescue,<br><br>    Defendants. | No. 86 C 7888<br><br>HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Before this court is Joseph Scheidler's, Andrew Scholberg, Timothy Murphy, Pro-Life Action League, and Operation Rescue's (collectively, "Defendants") motion for relief from the judgment entered against them on August 27, 1999.[1] Defendants bring their motion pursuant to Federal Rule of Civil Procedure 60(b)(2) and (3). For the reasons discussed below, Defendants' motion is denied.

---

[1] August 28, 2000, Defendants filed a motion for relief from judgment. In addition, they filed separately a supplemental Rule 60(b) motion. The court addresses these motions collectively.

# I. Background[1]

The National Organization for Women, Inc. ("NOW"), reproductive health clinics, and a class of potential women patients (collectively, "Plaintiffs") brought claims arising under § 1962 of the Racketeer Influenced and Corrupt Influences Act ("civil RICO") against Defendants. Plaintiffs alleged that Defendants, a coalition of anti-abortion groups, conspired to shut down abortion clinics through a pattern of racketeering activity. Plaintiffs asserted that Defendants conspired to use threatened or actual force, violence, or intimidation to induce clinic employees, doctors, and patients to give up their jobs and rights to obtain clinic services, and that the conspiracy harmed the clinics' business and property interests. During a trial lasting from March 4, 1998 through April 14, 1998, the jury heard evidence of anti-abortion protests that spanned from 1984 to 1998 orchestrated by Defendants.

The Pro-Life Action Network ("PLAN") and Operation Rescue ("OR"), led by Joseph Scheidler and other named defendants, coordinated a national anti-abortion movement. OR's stated purpose was to "overwhelm the law enforcement system and gain free access to the clinics without legal consequences." NOW v. Scheidler, 86 C 7888, 1999 WL 571010, at *3 (N.D. Ill. Jul. 28, 1999). Similarly, PLAN's founding members believed in aggressive tactics, including blocking clinic doors with their bodies in order to stop clinic patients and staff from entering the

---

[1] This background information is recounted in further detail in a previous opinion, NOW v. Scheidler, No. 86 C 7888, 1999 WL 571010 (N.D. Ill. July 28, 1999) (post-trial motions). Cites to the record, including the trial transcript, can also be found in that opinion. For procedural history, see generally, NOW v. Scheidler, 510 U.S. 249, 114 S. Ct. 798, 127 L.Ed.2d 99 (1994) (scope of civil RICO); NOW v. Scheidler, 968 F.2d 612 (7th Cir. 1992), rev'd in 510 U.S. 249 (1994); NOW v. Scheidler, 172 F.R.D. 351 (N.D. Ill. 1997) (class certification); NOW v. Scheidler, 1997 WL 610782 (N.D. Ill. Sep. 23, 1997) (summary judgment); NOW v. Scheidler, 897 F. Supp. 1047 (N.D. Ill. 1995) (motion to dismiss).

clinic. Id. Through the use of PLAN newsletters, speaking engagements, and conventions, PLAN leaders supported the use of illegal tactics, such as physically entering clinics and blocking procedure rooms, as a means to closing down health clinics that performed abortions. Id.

At trial, witnesses recounted the "fear and intimidation" they felt as a result of Defendants' actions. Id. at *2. In the July 28, 1999, memorandum opinion addressing various post-trial motions, this court highlighted the following incidents, among others, as illustrative of the tactics used by Defendants:

> In Milwaukee Wisconsin, protestors repeatedly banged on the car of a patient as she entered a health clinic parking lot, and grabbed at her arms and legs as she attempted to enter the clinic. "They surrounded me and my car. Telling me I wasn't a Christian, a baby killer. That I'm going to go to hell for this. Shoving pamphlets in my hand. Trying to stop me from making my way to the door of the building." The patient was visiting the clinic to receive her pap smear results and to receive her contraceptive medication.
>
> In Chico, California, a clinic administrator and two clinic escorts were physically smashed up against the entrance doors of a clinic by hundreds of protesters for four and a half hours. When the clinic administrator told the protestors that she was scared and was being crushed, she heard protestors shout, "Don't pay attention to them. They're murderers. They're baby killer. Whatever happens to them is God's will." The glass entrance to the clinic was shattered and the clinic administrator received bruises on her legs and arms from the event.

Id. at *1,* 2. In summarizing the evidence presented at trial, this court concluded that the jury heard evidence "tending to show that the objectives of the defendants at various protects included peaceful protest, informational picketing and leafleting, and acts of passive resistance in combination with intimidation (including violence and threats of violence) to stop abortions." Id. at *4.

The jury found that Defendants had engaged in 21 acts or threats involving extortion against patients, prospective patients, doctors, nurses, and/or clinic employees in violation of federal law, 25 such acts in violation of state law, and four acts or threats of physical violence to persons or property. Defendants also were found liable for monetary damages. On August 27, 1999, this court entered judgment in favor of Plaintiffs and entered a class-wide injunction against Defendants' unlawful racketeering activities. Defendants' appeal before the Seventh Circuit is still pending.

## II. Discussion

Defendants urge this court to grant them relief from judgment pursuant to Rule 60(b)(2) and (3). In support of their motion, Defendants cite to three alleged factual inconsistencies. Specifically, Defendants claim: (1) that the glass door at the Chico clinic noted previously was loosened but not shattered; (2) that the assault in Milwaukee described above involved an individual not connected to PLAN, and contrary to testimony, occurred in 1986, and not 1985; and (3) that the testimony of an anonymous witness is unreliable and untrue.

Relief under Rule 60(b) is an extraordinary remedy that is granted only in exceptional circumstances. Tobel v. City of Hammond, 94 F.3d 360, 362 (7th Cir. 1996). See also Publicis Communication v. True North Communications, Inc., 206 F.2d 725, 730 (7th Cir. 2000) (observing that a party "needs awfully good stuff to win a Rule 60(b)(2) motion"). Rule 60(b)(2) permits a court to revise a judgment because of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.

R. Civ. P. 60(b)(2). Rule 60(b)(3) provides a remedy for "fraud, misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3).

To obtain relief from judgment under Rule 60(b)(2), the movant must demonstrate: (1) that the evidence underlying the motion was discovered following trial; (2) that the movant exercised due diligence to discover the evidence; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is material; and (5) that the evidence is such that it will likely produce a new result at a retrial. In the Matter of Wildman, 859 F.2d 553, 558 (7th Cir. 1988); West v. Love, 776 F.2d 170, 176 (7th Cir. 1985). If any of these prerequisites is not satisfied, then the movant's motion must fail. 859 F. 2d at 558.

Defendants' first contention is that the glass door at the Chico clinic was not shattered as noted in this court's prior memorandum opinion. Even if defendants are correct about the condition of the glass door, no relief is warranted under Rule 60(b)(2). Defendant's concede as much. In defendant OR's Response brief, they acknowledge that changing this court's prior memorandum opinion to reflect that the glass door was loosened rather than shattered "would not affect the jury verdict." OR Reply Br. at 2. It is also important to note that Defendants do not take issue with the remaining details articulated in the memorandum opinion regarding the threatening and physically aggressive nature of the protest at Chico. The error cited by Defendants is immaterial and insufficient to reopen judgment.

Defendants next challenge Susan Hill's ("Hill") testimony regarding the PLAN demonstration in Milwaukee. Hill, the chief operating officer of the National Organization for Women's Health Centers, testified that PLAN participants staged a protest at the Milwaukee Summit Women's Health Organization clinic in 1995. "[T]here was pushing and shoving," Hill

described, "and our administrator's husband had his arm broken in attempting to get into the building itself." Tr. at 676. Hill also stated that the protestors identified themselves as having come from a PLAN meeting in Appleton, Wisconsin.

Defendants claim that Hill erroneously identified the protest as having occurred in 1985 when it actually took place one year thereafter. Defendants also assert that the person who assaulted the clinic administrator's husband was a passerby who was unconnected to PLAN. Indeed, documents submitted by Defendants appear to support their claim that the clinic administrator's arm was broken by a passerby unconnected to PLAN.

Even taking Defendants' contentions as true, however, they provide an insufficient basis to overturn the jury verdict. Relief under Rules 60(b)(2) is available only within a year from the date judgment is entered. Defendants filed the instant motion within the one year period, albeit at the eleventh hour. But above and beyond this time requirement, motions under Rules 60(b)(2) are subject to a due diligence standard. See Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1986) ("[T]he one-year period [set forth in Rule 60(b)] represents an extreme limit, and the motion will be rejected as untimely if not made within a reasonable time, even though the one year period has not expired.") Counsel's negligence is not grounds for Rule 60(b) relief. See Tobel, 94 F.3d at 362 (citing Dickerson v. Bd. of Educ. of Ford Heights, 32 F.3d 1114, 1118 (7th Cir. 1994)).

With due diligence, Defendants could have and should have discovered the evidence offered to support their claim in a more timely manner. The criminal complaint against the individual who broke the clinic administrator's husband's arm was filed on May 27, 1986, the state court decision reexamining the perpetrator's right to be examined for mental capacity was

-6-

issued on June 30, 1987, and the editorial in a Milwaukee newspaper suggesting that the broken arm incident was not caused by PLAN members was published on January 3, 1988. These public documents, available to Defendants nearly fifteen years ago, could have been used to impeach Hill during the 1998 trial. Rule 60(b)(2) provides relief from judgment where "newly discovered" evidence justifies such an extraordinary remedy. Here, defense counsel's failure to act in a timely manner precludes them from obtaining such relief.

Moreover, Defendants' attack on Hill's testimony does little to undermine the jury's verdict. During the eight week trial, the jury heard evidence of multiple incidents involving violence attributed to Defendants. Accordingly, the jury found that Defendants had engaged in four acts or threats of physical violence. In light of the multiple acts of violence ascribed to Defendants, their challenge to Hill's testimony does not demonstrate that the jury would likely reach a different verdict. See United States v. Townsend, 924 F.2d 1385, 1414 (7th Cir. 1991) ("It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance . . . that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.") (criminal case). Therefore, Defendants' refutation of Hill's testimony does not warrant relief under Rule 60(b).

Defendants do not fare better under Rule 60(b)(3). Pursuant to that rule, a judgment will be vacated if the movant shows by "clear and convincing evidence that the verdict was obtained through misconduct and that the misconduct was of such a nature that it prevented plaintiff from fully and fairly presenting his case." West, 776 F.2d at 176. See also Londsdorf v. Seefeldt, 47 F.3d 893, 897 (7th Cir. 1995). Rule 60(b)(3) protects the integrity of judicial proceedings, not

necessarily the correctness of the verdict. Londsdorf, 047 F.3d at 897. Thus, the alleged misrepresentation need not have altered the result of the case as a prerequisite to relief under Rule 60(b)(3). Id.

Defendants argue that Plaintiffs misrepresented the need to maintain the anonymity of the anonymous witness[2] when, at least according to Defendants, the same anonymous witness served as a class representative in an similar case in the Central District of California, Nat'l Abortion Federation v. Operation Rescue, CV 89-1181 ("NAF litigation"). Not only do Defendants question the anonymous witness's purported fear of reprisal and need for privacy, they also attack her credibility. Because Defendants raise this issue in a untimely fashion, however, the court need not speculate on whether Carolyn Thompson ("Thompson"), the class representative in the NAF litigation, is in fact the same person who testified anonymously in this action about being prevented her from obtaining post-operative care by the OR blockade in Los Angeles.

Defendants claim to have discovered the alleged identity between the NAF witness and NOW's anonymous witness when the Life Liberty Legal Defense Fund of California, who submitted an amicus brief on Defendant's behalf in the current appeal of this case to the Seventh Circuit, recognized that the broad outline of the NOW anonymous witness's trial testimony matched Thompson's verified averment in the initial and amended complaints filed in the NAF case. The amicus brief that purportedly exposed the identity of these witnesses was filed on February 8, 2000.

---

[2] It is important to note that both parties agreed on their own accord to allow this witness and others to testify anonymously.

Although Rule 60(b)(3) is not subject to a due diligence standard, Rule 60(b)(3) motions must be brought within a reasonable time. Londsdorf, 47 F.3d at 898. Defendants claim that, in February 2000, when the amicus brief was submitted, they identified Carolyn Thompson as the individual who testified anonymously in this case. Defendants, however, did not file the instant motion until August 28, 2000, despite having had their suspicions for nearly seven months. Defendants do not proffer an explanation for their delay. The delay is unreasonable.

In addition, Defendants have had in their possession all of the materials that ostensibly suggested the identity of the witness for well over a decade. During pre-trial discovery, Plaintiffs furnished Defendants with documents relating to the Los Angeles blockades. Not only did Plaintiffs produce the complaint filed on March 1, 1989, in the NAF case, including affidavits of Carolyn Thompson and others who had witnessed these blockades, but Defendants OR and Randall Terry were parties to the NAF litigation and presumably had access to the same documents. Defendants were also served with a summary of the anonymous witness's account, outlining the substance to which she would testify at the NOW trial. Moreover, Defendants interviewed the anonymous witness before her testimony. Armed with the NAF complaint and the pretrial documents in this case, Defendants not only could have questioned the anonymous witness before her testimony, but also used the documents to cross-examine the anonymous witness at trial. Therefore, Defendants were not prevented from fully and fairly presenting their case. This court will not revisit the judgment entered against Defendants.

Defendants also contest the anonymous witness's credibility. The allegations contained in the NAF complaint together with Thompson's averments in her sworn declaration in that case are at odds with what she testified to before the jury in the instant case, Defendants maintain.

Defendants also argue that despite the anonymous witness's claim of being subject to physical assault by OR protestors, there was no media coverage of such violence, thus undermining her account. Again, this evidence was available to Defendants well before the trial or shortly thereafter, rendering Defendants' challenge untimely.

In an attempt to impeach the anonymous witness's testimony, Defendants present some "new" evidence, but this evidence too does not warrant Rule 60(b) relief. Defendants reiterate arguments set forth in their prior Rule 60(b) motion, which this court denied on October 6, 1999, and the appeal of which is still pending. The court declines to rehash those same arguments. Furthermore, Defendants proffer affidavits of Thompson's neighbors who assert that she filed a frivolous sexual harassment suit, that she submitted false information on a bankruptcy petition, and that she informed them that she was paid for her testimony. The affidavits are offered solely for the purpose of impeaching the anonymous witness. As such, they do not merit relief under Rule 60(b)(2). Wildman, 859 F.2d at 558 (requiring movant to show that evidence is not merely cumulative or impeaching).

Additionally, the new evidence proffered by Defendants cannot serve as a basis for Rule 60(b) relief because they raise collateral matters. Rule 608(b) of the Federal Rules of Evidence provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence." Fed. R. Evid. 608(b). See also Taylor v. Nat'l R.R. Passenger Corp., 920 F.2d 1372, 1375 (7th Cir. 1990) (stating that "a witness may not be impeached by contradiction as to collateral or irrelevant matters elicited on cross- examination"). Defendants invite the court to delve into whether or not Thompson, who may or may not be the anonymous witness in the instant case, lied about a

sexual harassment case and withheld assets from her bankruptcy petition. Clearly, these are the extrinsic, collateral matters prohibited by F.R.E. 608(b). Where materials are inadmissible under the rules of evidence, they cannot support Rule 60(b) relief. United States v. McGaughey, 977 F.2d 1067, 1075 (7th Cir. 1992). Defendants' Rule 60(b) motion is denied.

In the alternative to Rule 60(b) relief, defendants request limited discovery and an evidentiary hearing to address further the issues presented. This request is denied.

### III. Conclusion

For the foregoing reasons, Defendants' Rule 60(b) motion for relief from judgment is denied.

Enter:

_____

David H. Coar

United States District Judge

Dated: March 28, 2001