UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL ORGANIZATION FOR WOMEN, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 86 C 7888 |
| vs. | ) ) ) | JUDGE DAVID H. COAR |
| JOSEPH M. SCHEIDLER, *et al.*, | ) ) | |
| Defendants. | ) | |

**DEFENDANT RANDALL TERRY'S MEMORANDUM
IN SUPPORT OF MOTION FOR RELIEF
FROM INTERLOCUTORY ORDER**

Comes now the Defendant, Randall Terry, and respectfully submits this Memorandum of Law In Support Of Motion For Relief From Interlocutory Order, and would state as follows:

**I.
INTRODUCTION**

Following a hearing on February 18, 1998, this court entered an interlocutory order disposing of all claims presented in this case as to one of the Defendants, Randall A. Terry, while preserving the remaining claims as to all other named Defendants. In this order the court made the following findings and conclusions: The Court has determined that the settlement is fair and reasonable and in the best interests of the Certified Classes." (Order at ¶ 1). The order also approved a settlement agreement entered into between Defendant Terry and the Plaintiffs,

and incorporated certain provisions of this settlement agreement, thereby making them the order of this court.

Among the provisions contained in this interlocutory order is the following injunction:

> Pursuant to Paragraph 3 of the Settlement Agreement, Randall A. Terry is hereby enjoined from interfering with the right of the Plaintiff Clinics to conduct their business (including but not limited to abortion), or the claimed right of women to avail themselves of the Plaintiff Clinics' services (including but not limited to abortion), by blockading the entrances by any means whatsoever; trespassing on the property of a Plaintiff Clinic; using violence or the threat of violence against any Plaintiff Clinic or any of its employees or volunteers, or against women who seek to use the services of such a Clinic; engaging in any other unlawful practice intended to prevent women from exercising their claimed right to have an abortion and/or prevent the Plaintiff Clinics from providing such services to women; or organizing, inciting or encouraging others to do any of the acts enumerated in this paragraph, or participating in an enterprise that engages in any of these acts (the "Acts").

This is virtually the same injunctive relief initially imposed on the other defendants and later vacated by the United States Supreme Court. The effect of this interlocutory order is to levy upon a single named defendant the full burden of an injunction now declared illegal as to the remaining defendants. The burden placed on this single defendant is augmented by the fact that this court retains jurisdiction for enforcement under the Terry Order for a period of twelve years from the date of its entry, or until the year 2010.

During the interim, since the entry of this interlocutory order, the United States Supreme Court has had two occasions to revisit the law governing the Plaintiffs' claims under R.I.C.O. On both occasions the court's rulings clarified substantially the law and its application to the specific facts of this case. In *Scheidler II,* 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), the Court ruled that the Hobbs Act defines "extortion" as necessarily including the improper "obtaining of property from another." *Id*., at 400, 123 S.Ct. 1057 (quoting '1951(b)(2)). It also decided that "[w]hatever the outer boundaries may be, the effort to

characterize petitioners' actions here as an "obtaining of property from' respondents is well beyond them." *Id*., at 402, 123 S.Ct. 1057. Accordingly, the Court held that "because they did not 'obtain' property from respondents," petitioners "did not commit extortion" as defined by the Hobbs Act. *Id*., at 397, 123 S.Ct. 1057.[1] In *Scheidler III*, 126 S.Ct. 1264, 164 L.Ed.2d 10 (February 28, 2006), the Court had occasion to review the Seventh Circuit Court of Appeals' decision not to vacate the injunction as previously ordered based on its query as to whether four acts of violence unrelated to extortion might constitute sufficient predicate acts under RICO to support the nationwide injunction. The Court again reversed the Seventh Circuit Court of Appeals and ruled that freestanding physical violence or threats of such physical violence cannot, standing alone, constitute predicate acts for purposes of a Hobbs Act violation.

Federal Rule of Civil Procedure 60(b)(5) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding . . . [when] a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The cases interpreting this rule recognize that it applies to consent decrees and injunctions enforcing settlement agreements - whether entered pre- or post-trial - and that the relevant change in law may come from an appellate decision in that litigation or in another case. Based on the two intervening rulings by the United States Supreme Court in this case, and specifically its vacation of the injunction earlier entered by this court, this Court should grant Defendant Randall A. Terry relief from the interlocutory order entered herein on February 18, 1998.

---

[1] The Court's opinion concluded: "Because all of the predicate acts supporting the jury's finding of a RICO violation must be reversed, the judgment that petitioners violated RICO must also be reversed. Without an underlying RICO violation, the injunction issued by the District Court must necessarily be vacated." *Id*., at 411, 123 S.Ct. 1057.

**ARGUMENT**

**I.     The Significant Clarification Of The Law Governing This Case Warrants Relief Under Rule 60(b)(5).**

When a party to an injunction or consent decree can show that there has been a significant change in either the factual conditions or decisional law it is appropriate to grant a Rule 60(b)(5) motion for relief. The relevant text of this rule provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>     . . . .
>     (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
>     (6) any other reason justifying relief from the operation of the judgment. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding. . . .

The Supreme Court recently noted that this Rule "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances." *Frew v. Hawkins*, 540 U.S. 431, 441 (2004). "A district court need not wait for the parties explicitly to request such changes; 'the court can on its own motion vacate' – or modify – 'the decree pursuant to Rule 60(b)(5).'" *O'Sullivan v. City of Chicago*, 396 F.3d 843, 866, n.6 (7th Cir 2005) (quoting *United States v. Bd. of Educ. of Chicago*, 799 F.2d 281, 297 (7th Cir. 1986)).

The two main Supreme Court cases dealing with the modification or dissolution of an injunction or consent decrees are *United States v. Swift ¶ Co.*, 286 U.S. 106 (1932), and *Rufo v.*

4

*Inmates of the Suffolk County Jail*, 502 U.S. 367 (1992). In *Swift*, the Court firmly established that it is within "the power of a court of equity to modify an injunction in adaptation to changed conditions though it was entered by consent." 286 U.S. at 114. The Court announced, however, that "[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." *Id.* at 119. For the next sixty years after *Swift*, all parties seeking to have equitable remedies such as consent decrees modified in light of changed circumstances faced this very difficult burden of proof.

In 1992, the Supreme Court eased this burden, and clarified the appropriate standard for modification of a consent decree. In *Rufo*, the district court had "held that Rule 60(b)(5) codified the 'grievous wrong' standard of [*Swift*]." 502 U.S. at 378. In reversing this decision, the Supreme Court held that the lower court's "conclusion does not follow when the standard is read in context." *Id.* at 379. The Court stated that *Swift* "pointedly distinguished the facts of that case from one in which genuine changes required modification of a consent decree." *Id.* The Court explained that the lower courts' rigid application of *Swift* "is neither required by *Swift* nor appropriate in the context of institutional reform litigation." *Id.* at 382. The Court continued by setting forth "a less stringent, more flexible standard" for modification of a consent decree in such cases:

> Rule 60(b)(5) provides that a party may obtain relief from a court order when "it is no longer equitable that the judgment should have prospective application." . . . Accordingly, a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstances.

*Id.* at 383.

More specifically, the Court held that "[a] party seeking modification of a consent decree may meet its initial burden by showing a significant change either in factual conditions or in law." *Id.* at 384. "A consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law. But modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Id.* at 388. The Court added, "[w]hile a decision that clarifies the law will not, in and of itself, provide a basis for modifying a decree, it could constitute a change in circumstances that would support modification if the parties had based their agreement on a misunderstanding of the governing law." *Id.* at 390 (citing *Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 437-38 (1976); *Nelson v. Collins*, 659 F.2d 420 (1981) (en banc)). The *Rufo* Court added, "[o]nce a moving party has met its burden of establishing either a change in fact or in law warranting modification of a consent decree, the district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 391.

Since *Rufo*, there has been some confusion among some federal circuit courts as to whether the above standard applies only to cases involving institutional reform, or as a general rule in all consent decree modification cases. In response to this uncertainty, the U.S. Court of Appeals for the Seventh Circuit has concluded that, although *Rufo* "involved institutional reform litigation, the 'flexible standard' adopted in [that case] is no less suitable to other types of equitable case[s]." *In re Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993) (quoting *Rufo*, 502 U.S. at 393). Consequently, "now a court can modify an injunction that it has entered whenever the principles of equity require it do so." *Id* . The Seventh Circuit recently noted that, after *Rufo*, "a party seeking modification of a consent decree does <u>not</u> have to prove a grievous wrong . . . ;

6

the party only 'bears the burden of establishing that a significant change in circumstances warrants revision of the decree.'" *Shakman v. City of Chicago*, 426 F.3d 925, 931 (7th Cir. 2005) (citations omitted)(emphasis added).

### A. The Terry Order Is Prospective And Subject To Modification..

The injunctive provisions of this Court's interlocutory order of February 18, 1998 are clearly prospective in nature, and provide for continuing enforcement jurisdiction for another four years, until 2010. "The provision of prospective relief is subject to the continuing supervisory jurisdiction of the court, and therefore may be altered according to subsequent changes in the law." *Miller v. French*, 530 U.S. 327, 347 (2000) (citing *Rufo*, 502 U.S. at 388). "The result is all one whether the decree has been entered after litigation or by consent. In either event, a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *Swift*, 286 U.S. at 114-15.

Consent decrees are considered a "hybrid between a judicial order and a settlement agreement or contract." Shima Baradaran-Robison, *Kaleidoscopic Consent Decrees: School Segregation and Prison Reform Consent Decrees After the Prison Litigation Reform Act and Freeman-Dowell*, 2003 B.Y.U.L. 1333, 1337 (2003). "There is no suggestion in [Supreme Court] cases that a consent decree is not subject to Rule 60(b). A consent decree no doubt embodies an agreement of the parties . . . [b]ut it is an agreement that the parties desire and expect will be . . . enforceable as, a judicial decree." *Rufo*, 502 U.S. at 379. "From the standpoint of interpretation a consent decree is a contract, but from the standpoint of remedy it is an equitable decree. . . . Even if compensatory in purpose and effect, it is . . . an equitable

7

order . . . and therefore subject to the usual equitable defenses." *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999). "Consent decrees have elements of both contracts and judicial decrees. . . . Consent decrees entered in federal court must be directed to protecting federal interests." *Frew*, 540 U.S. at 437. "To be sure, consent decrees bear some of the earmarks of judgments entered after litigation. At the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Firefighters*, 478 U.S. at 519. "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions though it was entered by consent." *Swift*, 286 U.S. at 114. The Supreme Court has emphasized that consent decrees must "spring from" a particular federal claim:

> To be sure, a federal court is more than 'a recorder of contracts' from whom parties can purchase injunctions; it is 'an organ of government constituted to make judicial decisions . . . .' Accordingly, a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction. Furthermore, consistent with this requirement, the consent decree must "[come] within the general scope of the case made by the pleadings," and must further the objectives of the law upon which the complaint was based. However, in addition to the law which forms the basis of the claim, the parties' consent animates the legal force of a consent decree. Therefore, a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial.

*Firefighters*, 478 U.S. at 525.

      **B.    Under *Agostini*, Finality Is Not A Bar To Modification Of The Terry Consent Decree.**

In *Agostini v. Felton*, 521 U.S. 203 (1997), the Supreme Court granted a motion to vacate an injunction under FRCP 60(b)(5) due to a change in its Establishment Clause jurisprudence.

> In *Aguilar v. Felton*, 473 U.S. 402 (1985), this Court held that the Establishment Clause of the First Amendment barred the city of New York from sending public

8

> school teachers into parochial schools to provide remedial education to disadvantaged children pursuant to a congressionally mandated program. On remand, the District Court for the Eastern District of New York entered a permanent injunction reflecting our ruling. Twelve years later, petitioners – the parties bound by that injunction – seek relief from its operation. Petitioners maintain that *Aguilar* cannot be squared with our intervening Establishment Clause jurisprudence and ask that we explicitly recognize what our more recent cases already dictate: *Aguilar* is no longer good law. We agree with petitioners that *Aguilar* is not consistent with our subsequent Establishment Clause decisions and further conclude that, on the facts presented here, petitioners are entitled under Federal Rule of Civil Procedure 60(b)(5) to relief from the operation of the District Court's prospective injunction.

*Id.* at 208-09. Citing *Rufo*, the Court noted, "[a] court may recognize subsequent changes in either statutory or decisional law," and added, "[a] court errs when it refuses to modify an injunction or consent decree in light of such changes." *Id.* at 215. *Agostini* recognized that, although there is a public interest in encouraging settlements and the finality of litigation, when the court's equitable powers are invoked to give a judgment "prospective application," the court has a greater interest in ensuring that its equitable powers do not work an injustice. In other words, "finality" must give way to equity whenever the enforcement of a once legitimate order or injunction has now become unjust due to a subsequent change in facts or law.

The imposition of the broad injunction set forth in the Terry Order of February 18, 1998, on one named defendant – when such relief is now legally unavailable against the other defendants due to new Supreme Court precedent – would work a manifest injustice. In light of the changes in the law of this case since 1998, the perpetuation of the Terry Order, to quote from *Swift*, converts this consent decree into "an instrument of wrong" or at best an instrument of inequity.

Moreover, now that the class-based considerations underlying this court's findings when the Terry Order was approved are moot, no legal justification remains for this extraordinary relief.

### C. The Underlying Rationale And Legal Theories Which Prompted The Terry Order Have Now Been Declared Meritless By The Supreme Court.

The Seventh Circuit has considered the merits of 60(b)(5) motions where a consent decree was entered *before* any trial followed by a subsequent court decision in which the underlying legal claims were at issue. In *United States v. Rueth Dev. Co.*, 335 F.3d 598 (7th Cir. 2003), the government sought to enforce the terms of a consent decree involving a landowner's use of his property under the Clean Water Act. "[B]efore the district court could rule on the government's motion to enforce, Rueth moved under Fed. R. Civ. P. 60(b)(5) for modification or vacatur of the consent decree based on the Supreme Court's decision in *SWANCC*." *Id.* at 602.(In *SWANCC*, the Supreme Court held that a regulation which allowed the U.S. Army Corps of Engineers to exercise jurisdiction over isolated intrastate waters exceeded the scope of regulatory authority granted to it by Congress. *Id.* at 602-603). Citing Rule 60(b)(5), Rueth alleged that this decision effected a change in law by eliminating the government's "effect on interstate commerce" basis for its enforcement action against him, making "legal what the decree was designed to prevent," thus rendering it unenforceable. *Id.* at 602. Rueth relied on the part of 60(b)(5) stating that a court may relieve a party from a final judgment if "it is no longer equitable that the judgment should have prospective application." *Id.* at 603. The Court denied Rueth's motion because, regardless of *SWANCC*'s effect upon the Army Corps' "*interstate commerce*" jurisdiction, "it is clear that *SWANCC* did not affect the

10

law regarding the government's alternative asserted basis for jurisdiction *adjacency*," which was actually reaffirmed in *SWANCC*. *Id.* at 604 (emphasis added).

The Court emphasized that the decree should not be vacated because further litigation would be necessary to determine whether, under these facts, the government had adjacency jurisdiction.

> [I]f the case is reopened, the parties would still have to litigate whether the government has adjacency jurisdiction . . . . Six years ago, however, Rueth made the conscious decision, given the uncertainties of litigation, not to contest that issue. It would render the consent decree worthless to allow him to do so now.

*Id.* at 605 (emphasis added).

The *Rueth* case is instructive in the instant case for several reasons despite the fact that the 60(b)(5) motion at issue was ultimately denied. First and foremost, it is significant that the Court thoroughly analyzed the merits of the motion on the facts of the case rather than mechanically dismissing it. The fact that a consent decree or other settlement agreement was entered into *before* any trial took place does *not* preclude a court from considering or granting a 60(b)(5) motion, as a significant change in law may render the enforcement of such an agreement "no longer equitable." In other words, any concerns a court may have about finality or the risk of re-litigation of issues – although relevant to the consideration of the facts of any given case – do *not* justify the categorical rejection of all 60(b)(5) motions involving a pre-trial settlement.

Importantly, none of the three justifications that the Court gave for denying the 60(b)(5) motion in *Rueth* are present in the instant case. First, the *Rueth* Court had some doubts about whether the Supreme Court decision at issue actually eviscerated the government's "interstate commerce" legal theory, and it ultimately declined to decide that question. *Id.* at 603-604. The

11

Supreme Court's decisions in *Scheidler II* and *Scheidler III*, however, directly considered and squarely rejected the legal theories upon which the Plaintiffs' claims were based – the same theories that prompted Randall Terry's settlement agreement. Second, the Supreme Court decision at issue only affected one of the two legal theories underlying the *Rueth* consent decree, leaving the other theory untouched. *Id.* at 604. Here, the Supreme Court's decisions leave no doubt that *all* of the Plaintiffs' legal theories which prompted the Randall Terry settlement were meritless. Finally, the interests of finality and the encouragement of settlements dictated that the *Rueth* consent decree should remain in place because additional litigation would be necessary to determine whether the government, in fact, had adjacency jurisdiction over the particular waters at issue in the case. Here, no additional litigation would be needed if the settlement agreement is vacated because the Supreme Court has already held that, as a matter of law, the legal theories underlying the Plaintiffs' claims were erroneous.

In a case that is analogous to the instant case, *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) *(en banc)*, the Sixth Circuit ordered the district court to vacate a consent decree and the injunctions issued to enforce it. In 1977, prisoners in the Michigan state prison system brought various constitutional and other claims in federal court. The defendants brought two motions to dismiss, but the court denied them with respect to the prisoners' claim that Michigan's procedures for parole created a liberty interest protected by the Due Process Clause. "Settlement negotiations ensued and eventually resulted in a consent decree on August 28, 1981." When the Sixth Circuit decided the case in 1994, it noted that a Supreme Court decision issued in 1983, coupled with a Sixth Circuit decision issued in 1991, made it clear that "there is not now any viable legal theory by which Michigan state authorities are required to follow such

procedural rules [set forth in the consent decree] as a matter of federal due process." *Id.* at 1165.

> The Sixth Circuit explained:
>
> The basic questions in the present en banc appeal are questions of law: (1) whether a set of injunctions imposed by a consent decree may be dissolved if the old decree appears to be based on an earlier misunderstanding of the governing law; and (2) if so, whether the set of injunctions before us here should be dissolved for this reason.

*Id.* at 1163. The court emphasized in its analysis that, "on the question of federal due process standards governing state parole procedures, there was considerable confusion in the cases in the late 1970's when this class action was originally filed." However, after the consent decree was entered and the subsequent cases were decided, it became clear that the legal theory "upon which the consent decree was formulated was erroneous." *Id.* The court explained:

> The change in the law in this case is significant. [The cases] make it clear that federal courts should no longer as a matter of federal due process seek to enforce purely procedural parole regulations. *The foundation upon which the claim for injunctive relief was built has crumbled.*

*Id.* at 1166 (emphasis added).

Importantly, the court noted that the possibility that Michigan's conduct may have been prohibited by *state* law did *not* provide a basis for continued enforcement of the consent decree once the *federal* claims it was based upon had been shown to be meritless.

> The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole as amplified in the consent decree as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such procedural rules as a matter of *federal* due process.
>
> A due respect for the doctrine of federalism, the structural principle by which we subdivide governmental power, discourages constitutionalizing state regulatory procedures. Otherwise federal courts would take over from state administrators and courts the interpretation and enforcement of a whole host of local procedural

13

rules governing such local matters as zoning, probate, licensing, school discipline or public health, and states would be discouraged from laying down reasonable and useful rules to govern the conduct of their own affairs for fear that those rules would subject them to jurisdiction and penalties in federal courts.

*Id.* at 1165.

The *Sweeton* court concluded by noting:

Injunctions are one of the law's most powerful weapons. Ongoing injunctions should be dissolved when they no longer meet the requirements of equity. The law changes and clarifies itself over time. Neither the doctrines of res judicata or waiver nor a proper respect for previously entered judgments requires that old injunctions remain in effect when the old law on which they were based has changed.

*Id.* at 1166-67.

The holding in *Sweeton* applies with equal force here. In both cases, the defendants entered into pre-trial settlement agreements only after the district court rejected their motions to dismiss with regard to key legal issues that various courts had differing interpretations of. *See NOW v. Scheidler*, 1997 U.S. Dist. LEXIS 14854 (N.D. Ill. 1997) (denying Defendants' motion for summary judgment); *NOW v. Scheidler*, 897 F. Supp. 1047 (N.D. Ill. 1995) (denying Defendants' motion to dismiss). In both cases, appellate court decisions decided years later squarely rejected the legal theory upon which the consent decrees were based. As in *Sweeton*, "decisional law has changed [since Randall Terry's settlement agreement] so that the enjoined behavior, which once might have been a violation [of R.I.C.O.], is no longer a matter of federal law at all." *See* 27 F.3d at 1166.

## CONCLUSION

Based on the foregoing reasoning and authorities, and the substantial change in the law governing this case since the entry of the Terry Order in 1998, the equitable principles inherent in Rule 60(b)(5) demand that this order be vacated and this defendant restored to the same footing as the remaining defendants in this case. In light of the Supreme Court decisions in Scheidler II and III, this Court should enter judgment in favor of defendant Terry.

Respectfully Submitted,

s/ Larry L. Crain
LARRY L. CRAIN
BRENTWOOD LAW OFFICES, PLLC.
5214 Maryland Way, Suite 402
Brentwood, TN  37027
(615) 376-2600
*Attorney for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2006, this foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

**Attorney for Plaintiffs:**

Fay Clayton, Esq.
Robinson, Curley ¶ Clayton
300 South Wacker Drive
Suite 1700
Chicago, IL 60606

**Attorney for Defendants Scheidler, Scholberg, Murphy and Pro-Life Action League:**

Thomas L. Brejcha, Esq.
Thomas More Society
29 South LaSalle Street
Suite 440
Chicago, IL 60603

s/ Larry L. Crain
LARRY L. CRAIN
BRENTWOOD LAW OFFICES, PLLC.
5214 Maryland Way, Suite 402
Brentwood, TN 37027
(615) 376-2600
*Attorney for the Defendants*