IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL ORGANIZATION FOR WOMEN, et. al., | ) ) ) |
| Plaintiffs, | ) ) |
| | ) No. 86 C 7888 |
| v. | ) |
| JOSEPH M. SCHEIDLER, et. al., | ) HONORABLE DAVID H. COAR |
| | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before this Court is Randall A. Terry's Motion for Relief from Interlocutory Order made pursuant to Federal Rule of Civil Procedure 60(b)(5). For the reasons stated below, the motion is denied.

**BACKGROUND**

Long ago in 1986, several health care clinics that perform abortions and the National Organization for Women, Inc. (collectively "Plaintiffs"), a national pro-choice nonprofit organization that supports the availability of abortions for women, sued several pro-life individuals and organizations, including Terry (the "Defendants"), who engaged in pro-life, anti-abortion protest activities under the belief that the Defendants had tried to disrupt activities at abortion clinics through violence and other illegal activities. Plaintiffs brought a civil action, which sought damages and an injunction forbidding Defendants from engaging in such activities anywhere in the Nation. Plaintiffs based their claims on the theories that the Defendants' conduct violated several federal and state laws including the Sherman Antitrust Act and the

-1-

Racketeer Influenced and Corrupt Organizations Act ("RICO"). The district court dismissed the complaint in 1991. The Seventh Circuit Court of Appeals affirmed that dismissal in 1992. In 1994, the United States Supreme Court reversed the Court of Appeals in 1994 and remanded the case. In November of 1997, trial was set for March of 1998.

In January of 1998, Plaintiffs and Terry entered into a settlement agreement in which they agreed that Terry would refrain from interfering with the right of the Plaintiff Clinics[1] to conduct their business (including but not limited to abortion), or the claimed right of women to avail themselves of the Plaintiff Clinics' services (including but not limited to abortion), by blockading the entrances by any means whatsoever; from trespassing on the property of a Plaintiff Clinic; from using violence or the threat of violence against any Plaintiff Clinic or any of its employees or volunteers, or against women who seek to use the services of such a Clinic; from engaging in any other unlawful practice intended to prevent women from exercising their claimed right to have an abortion and/or prevent the Plaintiff Clinics from providing such services to women; or from organizing, inciting or encouraging others to do any of the acts enumerated in this paragraph, or from participating in an enterprise that engages in any of these acts. Terry also agreed in the event that he commits one of the afore-mentioned acts, he will be subject to the reopening of this action, new lawsuits, and that the liquidated damages in any such case will be $15,000 per act. In exchange for his agreement, Plaintiffs agreed to drop all claims against Terry and therefore released him from the lawsuit.

---

[1] Plaintiffs Clinics refers to the class of women's health centers in the United States at which abortions are performed.

Plaintiffs and Terry also agreed that this Court may enter an order consistent with the settlement agreement enjoining Terry from engaging in of the acts he agreed to refrain from committing. On February 18, 1998, this Court held a fairness hearing, approved the settlement agreement and drafted an order that explicitly incorporated the terms and conditions of the settlement agreement. On February 27, 1998, that order, entitled Order of Final Approval of Partial Settlement between Plaintiffs and Randall A. Terry (the "Order"), was entered. The Order approved the settlement agreement, effectuated its terms in the form of a nationwide injunction, and retained jurisdiction for twelve years to enforce its terms and conditions. On March 3, 1998, trial began for the other Defendants. A jury found those Defendants engaged in several extortion-related acts and found them liable for treble damages under the RICO law. The Court of Appeals affirmed those findings in 2001. In 2003, the Supreme Court again reversed the Court of Appeals and remanded the case by holding that the Defendants' conduct did not constitute extortion as the term is defined under RICO.

On remand in 2004, the Court of Appeals held that the jury's RICO verdict was based on four acts (or threats) of physical violence unrelated to extortion in addition to the instances of extortion-related conduct and that the Supreme Court had no occasion to consider whether those four acts alone might constitute predicate acts under RICO to support liability. In 2006, the Supreme Court once again took the case. It held that "physical violence unrelated to robbery or extortion falls outside the scope of the Hobbs Act" and thus could not serve as predicate acts upon which RICO liability could be established. *Scheidler v. NOW, Inc.*, 126 S.Ct. 1264, 1270 (2006). It also unequivocally directed the lower courts to enter judgment for the Defendants (not including Terry because he was not one of the defendants at that point). *Id.* at 1274.

So now, because the Defendants will soon have judgment entered in their favor, Terry seeks to benefit from the risks taken and costs paid by the other Defendants and escape the consequences of his own decision to forgo those same risks and costs. In doing so, he relies on Federal Rule of Civil Procedure 60(b)(5), which allows a court the discretion to relieve a party from a final order when "a prior judgment upon which it is based has been reversed or otherwise vacated or if it is no longer equitable that the judgement should have prospective application."

## STANDARD OF REVIEW

A change or modification of a permanent injunction is extraordinary relief and requires a showing of extraordinary circumstances. *Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1186 (7th Cir. 1994); *Money Store, Inc. v. Harriscorp Finance, Inc.*, 885 F.2d 369, 372 (7th Cir. 1989); *Ben Sager Chemicals Int'l v. E. Targosz & Co.*, 560 F.2d 805, 808 (7th Cir. 1977). The burden is on the party seeking modification of the order to present clear evidence establishing that a significant change in either factual conditions or the law renders enforcement of the order inequitable. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992); *United States v. Rueth Dev. Co.*, 335 F.3d 598, 603 (7th Cir. 2003); *Protectoseal Co.*, 23 F.3d at 1186. The Seventh Circuit has made clear that "a court can modify an injunction that it has entered whenever the principles of equity require it do so." *In the Matter of Hendrix*, 986 F.2d 195, 198 (1993). The standard for modification is based not only on hardship to the enjoined party, but also on whether there remains a need to continue the injunction. In other words, one question to be asked is whether the purposes of the injunction been fulfilled. *United States v. Chicago*, 663 F.2d 1354, 1360 (7th Cir. 1981).

**ANALYSIS**

Terry spends the majority of his argument addressing why the *Rufo* standard of review should be applied in reviewing the Order instead of explaining exactly how application of the principles of equity should result in vacating the Order. Principles of equity are vast and amorphous but some guiding tenets can be discerned and applied here. While Terry has offered several functional reasons why the Order *could* be vacated, he has not demonstrated how the continued enforcement of the Order is inequitable or unjust. Therefore, Terry has not persuaded this Court that the fundamentals of equity justify this Court modifying its previous Order.

The Supreme Court has instructed that "[a] consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law. But modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." 502 U.S. at 388. The Court added that "[w]hile a decision that clarifies the law will not, in and of itself, provide a basis for modifying a decree, it could constitute a change in circumstances that would support modification if the parties had based their agreement on a misunderstanding of the governing law." *Id.* at 390. Neither of those circumstances is present here.

First, none of Terry's obligations under the Order have become permissible under federal law. In fact, all of the activities forbidden by the Order's injunction are themselves illegal under federal law. Thus, the Order does not place any additional legal burden on Terry, and instead merely provides for simplified enforcement that includes reopening of the action against Terry

(rather than filing a new action) and liquidated damages for each violation of the injunction in the event he decides to once again engage in the acts enjoined by the Order.

Second, while Terry is correct that the Supreme Court has clarified what can constitute extortion and predicate acts under RICO; this Court's Order (and the settlement agreement entered into by Terry and Plaintiffs) was not the product of a misunderstanding of governing law of RICO. The Order merely reflected the parties mutual preference to discontinue the litigation between them given mutually acceptable terms and conditions. The circumstances here are not like any institutional reform cases cited by Terry where a court enjoined unlawful conduct of a public entity only to have that conduct later held to be lawful or factual circumstances changing such that the conduct became incapable of repetition. *See e.g. Rufo*, 502 U.S. 367; *Rueth Dev. Co.*, 335 F.3d 598; *United States v. Krilich*, 303 F.3d 784 (7th Cir. 2002). Here, Terry is physically capable of committing each and every act (regardless of their legal characterization) enjoined by the Order.

Nor is the issue here similar to the issues presented in *Evans v. City of Chicago* or *Sweeton v. Brown*. 10 F.3d 474 (7th Cir. 1993); 27 F.3d 1162 (6th Cir. 1994). In *Evans*, the city of Chicago, a public entity, was subject to a consent decree that it disputed. 10 F.3d at 476. A plurality of that Court held "continued enforcement of [the] consent decree regulating the operation of a governmental body depend[ed] on the existence of a substantial claim under federal law." *Id*. at 480. Similarly, in *Sweeton*, a district court found that Michigan parole authorities were not following certain state laws. 27 F.3d at 1166. The court enjoined the authorities to follow certain procedures. *Id*. The Sixth Circuit held that not following state law

could not constitute a violation of federal law thus it stated that there was no basis in federal law for the injunctive relief imposed. *Id*.

That the Plaintiffs sued Terry for violation of RICO but may not have had a legally sufficient claim under RICO at the time the settlement was reached and the Order was issued does not affect the viability of the Order for two reasons. First, the Order was not based on the viability of the Plaintiffs' RICO claims; it was simply based on the parties' willingness to end their dispute. Second, other viable federal claims existed at the time the parties settled and those claims were part of the consideration of Terry's release. (*See* Settlement Agreement, p. 5, ¶4 ("the signatories to this Settlement Agreement hereby mutually release and discharge the other parties of this Settlement Agreement from any and all claims related to this Lawsuit, whether known or unknown....")).

Terry operates under the mistaken belief that because his decision was influenced by the *possibility* of RICO liability, a subsequent holding that RICO liability was not possible renders his agreement to settle (and the Order) ineffective. This Court is not unmindful of the pressures a defendant faces when charged with civil RICO liability. But all defendants are under pressure when they are faced with possible civil liability and many defendants nonetheless settle while their co-defendants do not. Those settlements are generally valid notwithstanding the ultimate disposition of the action. This is not a criminal case where one defendant entered into a plea agreement while the others proceeded to trial and the legal basis of the initial indictment was later found not to exist, therefore nullifying the whole basis for the plea agreement. Instead, this is a civil action where Terry, one of several joint potential tortfeasors, elected to settle and terminate his involvement in the ongoing litigation while the other tortfeasors proceeded. That

the legal claim under which the several tortfeasors where sued turned out to be legally deficient does not relieve Terry of his responsibilities under the terms of the settlement.

Terry did not wish to continue litigating and the Plaintiffs wanted to stop him from engaging in certain conduct they deemed unlawful with a guarantee that if he did not, he would pay Plaintiffs a fixed amount of money. Whether or not certain acts constitute extortion or predicate acts under RICO is irrelevant to this Court's decision to issue its Order. Similarly, none of the obligations that Terry finds himself under pursuant to the Order have become impermissible under federal law.

At its core, Terry's argument is merely that it is unjust that he is the only one subject to an injunction. In Terry's view, the interest in finality should motivate this Court to vacate its Order and put an end to the litigation; litigation that has existed since 1986. This Court would like nothing better than to end this action. But an issue more important than finality that must be considered in deciding Terry's motion is whether the purposes of the Order have been fulfilled or rendered undesirable. They have not. Plaintiffs and Terry entered into their agreement with two very distinct and desirable objectives. On one hand, Terry did not want to continue to defend the action. For whatever reason he did not want to take the course of the other Defendants and risk further litigation. On the other hand, Plaintiffs wanted Terry to agree to stop engaging in certain acts and they also wished to create an easier, more economical method of policing Terry than filing new cases and waiting for those courts or juries to find them entitled to awards of $15,000 for each of Terry's future acts. Terry also agreed to provide testimony at trial. Those objectives have been fulfilled with both the entry and continued existence of this Order.

As to finality, this Court was fully aware of the repercussions of entering an Order in which it retained jurisdiction to enforce its terms and conditions for twelve years. But the Court weighed those issues, in addition to other concerns, at the time of the fairness hearing. Not only did the Order represent fulfillment of Terry's and the Plaintiff's objectives, it also took into account the objectives of the putative classes of women and clinics. Terry avoided not only RICO liability, but also legal claims that could have been brought against him based on other legal theories, including the Freedom of Access to Clinic Entrances Act of 1994. (*See* Order, ¶5.)

The most important question here is actually whether this Court is able to retain jurisdiction to enforce this Order after the termination of the other Defendants from the case. It can and it does. A court can retain jurisdiction to enforce the terms of a settlement agreement when it expressly retains jurisdiction and it explicitly incorporates the terms of the settlement agreement in the order. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994). That is exactly what this Court did when it drafted and entered its Order.

Another important question is whether the parties, the Court, and the public are better served through the continued existence of this Order. The Order in this case was based on the settlement agreement voluntarily entered into by the parties. Settlement agreements are considered contracts. *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 455 (7th Cir. 1991). The Seventh Circuit has held that "a party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient." *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 863 (7th Cir. 1986) (citing *Glass v. Rock Island Refining Corp.*, 788 F.2d 450 (7th Cir. 1986)). It is considered desirable in our judicial system that parties settle their own disputes.

Vacating the Order now because Terry finds only his actions enjoined would undermine the integrity of the settlement agreement; an agreement this Court previously determined was fair and was in the best interests of all the parties involved.

Terry argues that since the Seventh Circuit has mentioned that "settlement is not an end in itself," *Evans*, 10 F.3d at 482, this Court should not rely on the fact that the Order represents the settlement of the parties as a factor for maintaining the Order. Instead, Terry urges this Court to consider vacating the Order because in his view, it will bring about a harmonious resolution of the dispute. Terry fails to recognize that his settlement with Plaintiffs already resolved the dispute between he and them. The Order was (and remains) necessary to effectuate that settlement.

An important consideration that is closely related to the question of whether the parties, the Court, and the public are better served through the continued existence of this Order is the question of whether the terms and conditions of the Order can be effectuated through the existence of the settlement agreement instead of the Order. If so, then perhaps there is no need to continue the Order. As discussed before, a settlement agreement is a contract. *Id*. It is therefore subject to all the vulnerabilities of a contract, such as interpretation, invalidity defenses, etc. A judicial order is not subject to those weaknesses. Simply put, the settlement agreement represents the intent and will of the parties, but the Order represents the intent and will of this Court to enforce that settlement agreement. This Court has the inherent power to hold in contempt those who are subject to and violate its orders. Plaintiffs have no comparable power to prevent violations of the settlement agreement. The Order thus represents this Court's willingness to respect and put into effect the will of the settling parties. Terry agreed to refrain

from engaging in the acts that precipitated this action. The injunction embodied in the Order is necessary to ensure that Terry keeps his end of the bargain.

Terry makes much of the notion of judicial economy by arguing that "inclusion of the settlement agreement in the court's judgment would seriously undermine finality by encouraging Plaintiffs to continuously invoke this court's jurisdiction, time, and resources whenever they conclude that any alleged act of Randall Terry, committed anywhere in the country, may implicate any of the agreement's terms." (Reply, p. 6-7.) First, this argument seems much more appropriate for the fairness hearing in 1998 instead of here. Again, this Court was well aware of the consequences of entering its Order. Second, judicial economy would probably be best served by having this Court handle any allegations of violations the settlement agreement given its familiarity with its terms and conditions and its knowledge of Illinois law, which purports to govern the settlement agreement.

## CONCLUSION

In conclusion, this Court's Order was not based upon federal law that has since been overturned. Terry voluntarily settled his dispute with the Plaintiffs and is bound to live with the consequences of his decision. Terry has not demonstrated that circumstances have changed such that continued enforcement of the Order is unjust or inequitable. Therefore, Terry's Motion for Relief from Interlocutory Order made pursuant to Federal Rule of Civil Procedure 60(b)(5) is DENIED.

/s/ David H. Coar
David H. Coar
United States District Judge

**Dated:** April 30, 2007