CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2197

NATIONAL ORGANIZATION FOR WOMEN, INC., *et al.*,
*Plaintiffs-Appellants*,

*v.*

JOSEPH M. SCHEIDLER, *et al.*,
*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 86 C 7888 — **Charles R. Norgle**, *Judge*.

ARGUED APRIL 18, 2014 — DECIDED APRIL 29, 2014

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. This suit began 28 years ago and has been to the Supreme Court three times. *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994); *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003); *Scheidler v. National Organization for Women, Inc.*, 547 U.S. 9 (2006). All defendants who stuck it out to the end (some settled) prevailed across the board. They applied for

costs under 28 U.S.C. §1920 and were awarded most of what they sought—but not until District Judge Coar held the request under advisement for three years and then retired, after which the case was transferred to District Judge Norgle. He awarded a total $63,391.45, modest for a suit that entailed discovery, a long trial, many motions in the district court, and appellate proceedings that span a generation. The costs amount to less than $2,300 per year of litigation.

Plaintiffs dispute some of the district judge's decisions about particular items, but we do not perceive either a clear error of fact or an abuse of discretion and have no more to say about those matters. Plaintiffs also offer three reasons why defendants should get nothing: (1) they took too long to request costs; (2) they did not establish that the transcripts and copies were "necessarily obtained for use in the case" as §1920 requires; and (3) they did not nudge Judge Coar to rule before he retired. We consider these in turn.

1. Final judgment was entered on May 14, 2007. Defendants filed a timely motion under Fed. R. Civ. P. 59 to amend the judgment; they also asked for more time to file a bill of costs, telling the judge that the length and complexity of the case, and the need to coordinate among the many defendants, justified additional time. Judge Coar did not act on that motion. Defendants then filed a bill of costs on July 14—one day late, unless the Rule 59 motion itself extended the time. Instead of deciding what effect the Rule 59 motion had, Judge Coar entered an order on July 19 accepting the belated filing. N.D. Ill. Local Rule 54.3 requires parties seeking costs to follow up by conferring with other litigants to see what disputes can be resolved without judicial action. Defendants

asked for extensions; the last of these ran through October 1, and defendants filed the Local Rule 54.3 statement that day.

Judge Norgle concluded that these events entitle defendants to a ruling. A district judge may accept untimely filings—Fed. R. Civ. P. 54(d), which governs costs, is not among the few that create non-extendable time limits—and appellate review is deferential. See, e.g., *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380 (1993). Not that an extension was necessary. A timely motion under Rule 59 suspends the judgment's finality, see Fed. R. App. P. 4(a)(4), which means that the time to file the bill of costs did not begin to run until the district judge resolved the Rule 59 motion. Judge Coar did not do that until August 22, 2007, when he granted defendants' motion and fixed the problems in the initial judgment. The bill of costs filed on July 14 was early, not late. And the Local Rule 54.3 statement was timely.

2. Plaintiffs contend that defendants did not adequately prove what costs they had incurred. Although §1920 refers to papers "necessarily obtained for use in the case", it does not define "necessarily". Nor does Rule 54(d), which creates an informal process under which the clerk of court awards costs, subject to judicial review by a dissatisfied party. But 28 U.S.C. §1924 provides that the party seeking costs must verify the claim by "an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." Defendants did exactly that, using the statutory formula. Plaintiffs insist that this is not enough.

Why not? No statute or rule requires more. Parts of plaintiffs' brief propose that the affidavit go through the record to demonstrate why *each transcript*, and perhaps even each copy of any document, was necessary. That would be preposterous. Copies are made for pennies a page. Having a lawyer devote the time necessary to demonstrate the necessity of each transcript and every copy of a document would be far more costly than the copying itself. No sensible legal system requires parties to waste $60 of lawyers' time to explain spending $6 on making a copy of something. At oral argument plaintiffs denied that they are arguing for a document-by-document demonstration of necessity, but they did not supply an intermediate position between the general §1924 affidavit and a document-specific explanation.

If by "necessarily" §1920 meant something like "indispensably," then perhaps there would be no alternative to a document-specific inquiry. But in law the word "necessary" often does not live up to the impression it conveys to lay readers. See, e.g., *McCulloch v. Maryland*, 4 Wheat. 316 (1819) (discussing the Constitution's "necessary and proper" clause). We have understood §1920 as requiring no more than that the transcripts or copies be reasonably and prudently obtained—which depends on how things seemed when the expenditures were made, without the benefit of hindsight. See, e.g., *Majeske v. Chicago*, 218 F.3d 815, 825 (7th Cir. 2000); *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243–44 (7th Cir. 1985). When our litigants ordered transcripts and made copies, they were defending against a claim for treble damages under RICO plus a demand for a sweeping injunction. And they verified the reasonableness of these outlays by paying themselves, knowing that they would have to bear every penny unless they won in the end.

Hindsight tells us that the defendants could have won without much of the evidence they produced, because the Supreme Court eventually deemed plaintiffs' legal theories to be deficient. But this circuit had held otherwise; the Supreme Court reversed us three times. The initial reversal set aside an order in defendants' favor. That decision was followed by discovery, a seven-week jury trial ending in damages plus a nationwide injunction, two appellate victories by plaintiffs, and two more reversals by the Supreme Court. A legal theory strong enough to win in the court of appeals is more than enough to justify prudent defense expenditures, no matter what happens in the Supreme Court.

3. By October 12, 2007, the bill of costs and Local Rule 54.3 statement had been submitted, and briefs had been exchanged. The matter was ripe for decision. Nothing happened until December 3, 2008, when the district court entered a mysterious order dismissing "as moot" defendants' request for extra time to file the Local Rule 54.3 statement. The order was a mystery because the statement was already on file, and more than a year earlier Judge Coar had granted this very motion. On September 24, 2009, the clerk's office noted on the docket that the case was closed. This is a second mystery, because the case had been terminated by final judgment in May 2007, and that judgment had been amended (and thus became final with finality) in August 2007. Apparently the clerk's office did not send anyone a document corresponding to the docket entry, which just memorialized something that had occurred 25 months earlier.

Judge Coar retired on December 31, 2010, without acting on the long-pending bill of costs. Four months later, defendants used a procedure established by N.D. Ill. Local Rule

78.5 and called the matter to the court's attention. Plaintiffs responded by asserting that defendants' failure to file such a notice before Judge Coar's retirement forfeited their opportunity to receive a decision. In March 2012 Judge Norgle rejected that contention, and in May 2013 he awarded most of the costs defendants had requested—after they had waited 5½ years for judicial action.

Plaintiffs say that equity required defendants to give Judge Coar a heads up so that the judicial officer with the most knowledge about the case could resolve the dispute. Judge Coar undoubtedly was best situated to tackle this, and he should have done so in fall 2007 rather than letting the matter slide. But judicial delay does not wipe out a litigant's rights. Plaintiffs suspect that defendants thought that Judge Coar would rule against them and were happy to wait until the request landed in a different judge's lap. So what? No statute, rule, or decision of which we are aware requires litigants to pester judges for rulings on pain of forfeiture. Local Rule 78.5 is permissive; it says that parties "*may* on notice … call a motion to the attention of the court for decision" (emphasis added). If plaintiffs thought that they had their best prospects with Judge Coar, *they* could have used Local Rule 78.5 to ask him for a ruling. He took senior status in August 2009, and his plan to retire at the end of 2010 was public knowledge. The two sides had equal information and were equally passive. Neither should gain from silence, or judicial delay, at the expense of the other.

Nagging judges to act on motions under advisement is not essential to preserving one's rights. The court's docket-tracking software, and each judge's duty to report every six months on all motions under advisement, are designed to

keep matters moving without the need for litigants to communicate impatience. Their shortcomings do not oblige litigants to supplement them with ticklers. The decisions on which plaintiffs rely, such as *In re Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996), and *Zelazny v. Lyng*, 853 F.2d 540 (7th Cir. 1988), deal with delay in filing suits or motions, not with litigants' silence after matters are under advisement. At oral argument, plaintiffs' lawyer candidly admitted that she did not know of any decision, by any court, creating a badger-the-judge-or-forfeit-the-motion requirement; our search did not turn one up. We will not be the first. The obligation to render timely rulings rests on the judiciary, not the parties.

This litigation has lasted far too long. At last it is over.

AFFIRMED